SHEPHERD, FINKELMAN, MILLER
    & SHAH, LLP
Nathan C. Zipperian (Fl. Bar No. 61525)
16425 N. Commerce Parkway
Suite 320
Fort Lauderdale, FL 33326
Telephone: 954/515-0123
Facsimile: 866/300-7367
Email: nzipperian@sfmslaw.com

[Additional counsel listed on signature page]

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| BERNICE OCASIO, On Behalf Of Herself and All Others Similarly Situated, | ) ) ) | **No**: |
| Plaintiff, | ) ) | |
| vs. | ) ) | **CLASS ACTION COMPLAINT** |
| THE J.M. SMUCKER COMPANY, | ) ) ) | |
| Defendant. | ) ) ) ) | |
| | ) ) | **DEMAND FOR JURY TRIAL** |

Plaintiff, Bernice Ocasio ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant, the J.M. Smucker Company ("Smucker" or "Defendant"), and alleges, on personal knowledge as to all facts related to herself and upon information and belief as to all other matters, as follows:

## I.     NATURE OF THE ACTION

1.      This case is about a company that sells misbranded food to consumers.  Plaintiff brings this action individually and on behalf of a proposed class ("Class"), as more fully defined below, of similarly situated consumers in Florida seeking to redress the pervasive pattern of fraudulent, deceptive, false, and otherwise improper advertising, sales, and marketing practices that Defendant engages in regarding its Creamy Supreme® Milk Chocolate frosting product ("Frosting" or "Product").

2.      Defendant manufactures, markets, and sells ready-to-use frosting in a variety of flavors.  *See*, *e.g.*, http://www.pillsburybaking.com/products/frostings/creamy-supreme/ingredients.

3.      At all relevant times, Smucker has made, and continues to make, misrepresentations and/or omissions regarding the purported "milk" in its Frosting.  Specifically, Smucker misrepresents that its "milk chocolate" Frosting contains milk: (1) representing on the principal display panel ("PDP") the front of the package that milk is a characterizing flavor; and (2) concealing or failing to disclose on the PDP, as required by law, that the Product is artificially flavored.  21 C.F.R. § 101.22(i)(1)(ii).

4.      Smucker recognized, and continues to recognize, that there is a financial benefit from selling products labeled, advertised, and promoted as containing milk but that actually do

not contain any milk.  Real milk is more expensive than the non-milk ingredients in Defendant's Product, like palm oil and corn syrup.

5.      As a result of Defendant's misrepresentations and/or omissions regarding its Frosting, Smucker has deceived consumers, including Plaintiff and members of the Class, into believing that the Frosting was made with better-quality (and more expensive) ingredients than competing milk chocolate frosting products.

6.      Had Plaintiff and the Class been aware of the true characterizing ingredient information of the Frosting, they would not have purchased it, or they would have paid less for it.

7.      As a result of Defendant's false and misleading statements, including the failure to disclose the lack of milk and the presence of artificial flavoring on the PDP, Plaintiff and the Class bought tens of thousands of containers of Defendant's Frosting.  Plaintiff and the Class have suffered – and continue to suffer – injury in fact as a result of Defendant's misrepresentations and/or omissions.  Additionally, Defendant acquired money or property from Plaintiff and the Class as a result of its unfair, deceptive, and unlawful conduct as alleged herein.

8.      Plaintiff brings this action on behalf of herself and all other similarly situated Florida consumers to halt the dissemination of this false and misleading advertising, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased Defendant's Frosting.  Plaintiff alleges violations of the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") and, alternatively, asserts a claim for unjust enrichment.

## II.      JURISDICTION AND VENUE

9.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

and Plaintiff and certain members of the Class are citizens of states different from that of

Defendant.

10.     This Court has personal jurisdiction over Defendant, because Defendant has

conducted and continues to conduct business in the State of Florida, and because Defendant has

committed the acts and omissions complained of herein in the State of Florida, which is also the

state in which Plaintiff resides and is a citizen.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant:

      a.     is authorized to conduct business in this district and has intentionally
           availed itself of the laws and markets within this district through the
           promotion, marketing, distribution, and sale of Frosting here;

      b.     does substantial business in this district;

      c.     is subject to personal jurisdiction in this district; and

      d.     Plaintiff resides in this district.

### III.     <u>PARTIES</u>

12.     Plaintiff is, and at all times relevant to this action has been a resident of Weston,

Florida and Boca Raton, Florida, and, thus, is and at all times relevant to this action has been a

citizen of Florida.  Before buying Defendant's Frosting, Plaintiff was exposed to and saw the

characterizing flavor information on the PDP, and she purchased the Frosting in reliance on

Defendant's representations that the "milk chocolate" Frosting was what it purported to be.

Plaintiff suffered injury in fact and lost money as a result of Defendant's false and misleading

conduct.

13.     Defendant is a corporation that was incorporated under the laws of the State of

Ohio and which has its principal place of business at 1 Strawberry Lane, Orrville, Ohio 44667.

Therefore, Defendant is a citizen of Ohio.  Defendant promotes, markets, distributes and sells the Frosting throughout the United States, including to consumers in the State of Florida.

14.     Smucker has been one of America's most trusted brands for more than 100 years. Smucker promotes that it still follows "the same, strong ethical values on which our Company was founded . . . . [t]hese values include honesty, respect, trust, responsibility, and fairness.  We accept nothing less, regardless of the circumstances."  2015 Corporate Responsibility Report, p. 11.

15.     Smucker labels, advertises, and promotes its milk chocolate Frosting as a Pillsbury® product, which has also been one of America's most trusted brands for more than 100 years.  http://www.pillsburybaking.com/about-pillsbury.  Defendant's products are sold to consumers through grocery and other retail stores in Florida and throughout the United States. Defendant also promotes its products throughout Florida, including its Frosting, through its websites.  *See*, *e.g.*, http://www.pillsburybaking.com/products/milk-chocolate-731/ingredients.

## IV.      SUBSTANTIVE ALLEGATIONS

### A.     Product Labeling Must be Truthful and Accurate

16.     Product labeling must be truthful and accurate; misbranded food cannot legally be sold or possessed, has no economic value, and is legally worthless.  Purchasers of misbranded food are entitled to a refund of their purchase price or other relief or compensation as determined by the Court.  Plaintiff and members of the Class that purchased the Product paid an unwarranted premium for the Product.

17.     Under the Food, Drug, and Cosmetic Act ("FDCA"), the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  *See* 21 U.S.C. § 343(a). Misbranding reaches not only false claims, but also those claims that might be technically true, but still are misleading.  *See United States v. Ninety Five Barrels More or Less Alleged Apple*

- 4 -

*Cider Vinegar*, 265 U.S. 438, 442-43 (1924).  If even one representation in the labeling is misleading, then the entire food is misbranded, and no other statement in the labeling cures a misleading statement.  *See* 21 U.S.C. § 343(a).  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze."  *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951); *see United States v. An Article . . . Sudden Change*, 409 F.2d 734, 740 (2d Cir. 1969).  Under the FDCA, it is not necessary to prove that anyone was actually misled.  *See, e.g., United States v. An Article of Food Labeled Nuclomin*, 482 F.2d 581, 584 (8th Cir. 1973)

18.     Food manufacturers are required to comply with federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

19.     Recognizing that consumers (like Plaintiff) heavily rely on the front-of-package labeling to make informed food choices, the law mandates that the labels on packaged food must be truthful and accurate.  In recent years, the Food and Drug Administration ("FDA") has become increasingly concerned that food manufacturers have been disregarding food labeling regulations.  To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

20.     In October 2009, the FDA issued a letter entitled, *Guidance for Industry: Letter Regarding Point of Purchase Food Labeling*, to address its concerns about front of package labels ("FOP Guidance").  The FDA recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with

enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

21.     Despite the issuance of this FOP Guidance, Defendant did not remove the unlawful and misleading food labeling claims from the Product.

22.     On March 3, 2010, the FDA issued an "*Open Letter to Industry from [FDA Commissioner] Dr. Hamburg*" ("Open Letter").  The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers.  In pertinent part, the Open Letter stated:

> I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs.  The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling.  The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections …
>
> Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.
>
> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace.  While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices . . .
>
> For example, juice products that mislead consumers into believing they consist entirely of a single juice are still on the market.  Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products . . . .
>
> I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling . . . .

23.     The FDA has stated that the agency not only expected companies that received warning letters to correct their labeling practices, but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary.

24.     Defendant has continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter and warning letters to the industry for the same types of unlawful front-of-pack claims at issue in this Complaint.

25.     **The FDA's warning letters addressing unlawful claims like those that Defendant makes regarding the Product indicate that it violated the Federal Food, Drug, and Cosmetic Act (the "Act"), the applicable regulations in 21 C.F.R. § 101, *et seq.*, and that the Product was misbranded within the meaning of Section 403(r)(1)(A) of the Act.** These warning letters were not isolated; the FDA has issued numerous warning letters to other companies for the same type of labeling claims at issue in this case.  These letters are public records that are discoverable and downloadable from the Internet:

a.     On April 17, 2007, the FDA issued a warning letter to Langers Juice Company, Inc., which manufactured a product with labeling that stated it contained ginseng. The product was misbranded, because it did not contain ginseng. http://www.fda.gov/iceci/enforcementactions/warningletters/2007/ucm076361.htm

b.     On November 26, 2007, the FDA issued a warning letter to Glenn Foods, Inc., which manufactured a snack food with labeling that stated it was made "With Real Cheddar Cheese!"  The product was misbranded, because the ingredient statement declared that it was made with cheddar cheese powder, not cheddar cheese. http://www.fda.gov/iceci/enforcementactions/warningletters/2007/ucm076581.htm

c.     On August 7, 2009, the FDA issued a warning letter to Universal Taste, Inc., which manufactured food products with labeling that claimed they were "rich in . . . VITAMIN E . . ."  The products were misbranded, because according to the product labels, they contained no vitamin E. http://www.fda.gov/iceci/enforcementactions/warningletters/2009/ucm183392.htm

d.     On December 15, 2009, the FDA issued a warning letter to Awesome Foods, Inc., which manufactured a "Raw Parmesan Cheeze" product that did not contain any milk.  The product was misbranded, because "the basic nature of cheese is that it is a food made using milk as the starting ingredient." http://www.fda.gov/iceci/enforcementactions/warningletters/2009/ucm195206.htm

e.     On April 10, 2012, the FDA issued a warning letter to Med-Diet Laboratories, which manufactured a "Beef-Like Soup Base" that contained no beef and did not disclose natural and artificial flavors on the principal display panel. http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm300954.htm

- 7 -

f.  On September 7, 2012, the FDA issued a warning letter to SR Rosati, Inc., which manufactured "passion fruit," "cry baby sour watermelon," and "cry baby sour apple" water ices.  The products were misbranded, because they contained natural and artificial flavors, but the names of the characterizing flavors on the labels were not "accompanied by the word(s) 'artificial' or 'artificially flavored'." http://www.fda.gov/iceci/enforcementactions/warningletters/2012/ucm318790.htm

g.  On October 24, 2014, the FDA issued a warning letter to Helados La Tapatia, Inc., which manufactured "Natural Creamy Fruit Bars" that were misbranded, because they did not contain any fruit.  21 C.F.R. § 101.3(b). http://www.fda.gov/iceci/enforcementactions/warningletters/2014/ucm421463.htm

h.  On October 20, 2015, the FDA issued a warning letter to Flechard S.A.S., which manufactured butter with labeling that included images of cows and sheep.  The FDA opined that the labeling "may be confusing to some consumers in that it may lead them to believe that these products also contain sheep's milk" when they were only made from cow's milk. http://www.fda.gov/iceci/enforcementactions/warningletters/2015/ucm469219.htm

26.  Defendant has profited from selling the Product labeled, advertised, and promoted as containing milk, but that actually does not contain any milk.  Real milk is more expensive than many ingredients in the Frosting, like corn syrup and palm oil.

**B.  Smucker's Frosting is Mislabeled, Because It Contains No Milk or Dairy Ingredients**

27.  Milk is a "characterizing flavor" in Defendant's Frosting.  If a food product's labeling "makes any direct or indirect representations with respect to the primary recognizable flavor(s) by word . . . or other means . . . such flavor shall be considered the characterizing flavor."  21 C.F.R. § 101.22(i).

28.  Consumers, like Plaintiff and the Class, expect that a product labeled as "milk chocolate" frosting contains milk as a characterizing flavor, because "milk chocolate" must contain milk or other dairy ingredients, like butter or cream.  21 C.F.R. §§ 163.130(a), (b)(4).

29.  Defendant's primary competitors sell milk chocolate frosting products that either contain milk or disclose on the PDP that they are artificially flavored.  Duncan Hines ® "Creamy

Home-Style Milk Chocolate" frosting includes nonfat dry milk and cream powder ingredients. Betty Crocker® "Rich & Creamy Milk Chocolate Frosting" does not contain milk, but the PDP discloses that it is "artificially flavored."

30.     If none of the natural milk flavor used in the Frosting is derived from milk or dairy ingredients (*i.e.*, if all of the natural milk flavor is from a non-dairy source), the Frosting must either be labeled with the name of the product from which the milk flavor is derived or be labeled as "artificially flavored."  21 C.F.R. § 101.22(i)(1)(ii).

31.     Defendant's Frosting contains no milk or dairy ingredients (or natural milk or dairy flavors).  Accordingly, the PDP of the Frosting must be labeled with the name of the product(s) from which the milk flavor is derived (*e.g.*, "palm oil and sugar flavored milk chocolate frosting" or "artificially flavored milk chocolate frosting").  21 C.F.R. § 101.22(i)(1)(ii).

32.     To deceive consumers to believe that its Frosting contains higher-quality, more expensive ingredients than it actually does, Smucker ignored, and continues to ignore, the food labeling laws by: (1) using unlawful labeling that represents it contains milk; and (2) concealing or failing to disclose, on the PDP, the lack of milk and the presence of artificial flavor in its "milk chocolate frosting."

33.     Defendant continues to state fraudulent and unlawful claims on its Product's labels.  Despite all of the available warnings and detailed instructions, Defendant's Frosting continues to run afoul of FDA guidance, as well as federal and Florida law.

34.     Plaintiff did not know, and had no reason to know, that the Frosting was misbranded and bore unlawful food labeling claims that failed to meet the requirements to make such claims.  Similarly, Plaintiff did not, and had no reason to know, that the Frosting was

misbranded because the package labeling on the Product purchased by Plaintiff was false and misleading.

35.    Defendant had actual notice of the requirements to prominently disclose that its Product is naturally or artificially flavored.  Defendant's other non-dairy frosting flavors disclose that they are "naturally and artificially flavored" immediately after the name of the characterizing flavor, but the "Creamy Supreme® Milk Chocolate" Frosting does not:

 

http://www.pillsburybaking.com/products/buttercream-1035/ingredients
http://www.pillsburybaking.com/products/milk-chocolate-731/ingredients

36.    Defendant'' "Creamy Supreme ® Milk Chocolate" Frosting does not contain any milk ingredients.  The actual ingredients contained in the Product are as follows:

SUGAR, WATER, PALM OIL, CORN SYRUP, COCOA PROCESSED WITH ALKALI, CORN STARCH, CANOLA OIL, CONTAINS 2% OR LESS OF: MONO AND DIGLYCERIDES, SALT, MODIFIED CORN STARCH, POLYSORBATE 60, CITRIC ACID, POTASSIUM SORBATE (PRESERVATIVE), ARTIFICIAL COLOR, SOY LECITHIN, XANTHAN GUM, ANTIOXIDANTS (ASCORBYL PALMITATE, MIXED TOCOPHEROLS, CHAMOMILE AND ROSEMARY EXTRACTS).

http://www.pillsburybaking.com/products/milk-chocolate-731/ingredients.

37.     To appeal to consumer preferences for real milk flavors, Defendant has repeatedly made false and unlawful claims regarding the milk content of its Frosting.  The Product does not contain a trace of milk that would, *e.g.*, require disclosure as an allergen.  21 U.S.C. §§ 321(qq)(1); 343(w).  Defendant's Product is misbranded, because the front of the package is not labeled with the name of any ingredient (except milk) from which the milk flavor is derived, and does not disclose that it is "artificially flavored."  21 C.F.R. §§ 101.22(i)(1)(ii), (2).

38.     By using defined terms improperly, Defendant was, in effect, falsely asserting that the Frosting contained milk for which Plaintiff and the Class paid a premium price.

39.     As provided in the warning letters discussed above, Defendant's claims are false, misleading, and unlawful, because they represent that the Frosting contains milk, even though it does not.

40.     Plaintiff relied on Defendant's labeling when making her purchasing decisions and was misled because she erroneously believed Defendant's misrepresentation that the Frosting contained milk.  Plaintiff would not have purchased the Frosting (or would have paid less for it) had she known that it did not, in fact, contain milk.

41.     For these reasons, Defendant's labeling claims at issue in this class action Complaint are false and misleading and in violation of 21 C.F.R. § 101.22 and Florida law, and the Product at issue is misbranded as a matter of law.  Therefore, Defendant's Product cannot be sold or held, because it is legally worthless.  Plaintiff and members of the Class who purchased the Product paid an unwarranted premium for the Product.

42.     Defendant's unlawful labeling practices and actions mislead Plaintiff into purchasing a product she would not have otherwise purchased had she known the truth about the Product.

- 11 -

43.     Due to Defendant's misbranding, Plaintiff lost money by purchasing an unlawful Product.

44.     As to her misleading claim, Plaintiff alleges pursuant to Federal Rule of Civil Procedure 9(b), as follows:

45.     Plaintiff did not know, and had no reason to know, that the Frosting was misbranded by the front-of-package characterizing flavor claims, despite Defendant's failure to meet the requirements to make those claims.  Plaintiff read and relied upon Defendant's front-of-package characterizing flavor claims, and was thus deceived.  Because of Defendant's unlawful and misleading front-of-package characterizing flavor claims, Plaintiff was misled to believe that the Product was better than competing products.

46.     Plaintiff reasonably relied on Defendant's representations when making her purchasing decision and was misled by the front-of-package characterizing flavor claims at issue here.  Plaintiff would not have purchased the Product had she known the truth about it, *i.e.*, that it did not contain milk.  Plaintiff had other alternatives available that contained milk or less expensive products that properly disclosed that they were artificially flavored.  Reasonable consumers would have been misled in the same manner as Plaintiff.

47.     Defendant's unlawful and false front-of-package characterizing flavor claims are actionable.  Plaintiff and the Class would not have purchased the Frosting had they known the truth.

## V.      PLAINTIFF'S EXPERIENCE WITH THE FROSTING

48.     As a result of her understanding, and in reliance on the Product's labeling, Plaintiff purchased and consumed the Product regularly through late summer of 2014.  Plaintiff purchased the Frosting on multiple occasions at various retail stores, including a Publix

Supermarket located at 11650 West Palmetto Park Road, Boca Raton, FL 33428, for approximately $1.79 per container, plus tax.

49.     Trusting Smucker's statements, Plaintiff purchased the Frosting over other similar products, because the front-of-package labeling indicated that milk was a characterizing ingredient, and this labeling did not disclose that the Product was artificially flavored.

50.     Plaintiff suffered an ascertainable loss in the amount of the purchase price of the Product, as a result of Smucker's conduct described herein.

51.     Defendant has violated the standards set by 21 C.F.R. §§ 101.2, 101.4, 101.22, and 102.5 by failing to include, on its Product labels, the nutritional information required by law and, therefore, has violated the FDUTPA.

52.     Defendant has manufactured, distributed, advertised, marketed and sold the misbranded Product in violation of the standard set by sections a, f, i, k of 21 U.S.C. § 343 (and the FDUTPA), and continues to do so.  Pursuant to 21 U.S.C. § 343(a), food shall be deemed to be misbranded if, as in the instant case, "it bears a false or misleading label."

## VI.     CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this lawsuit on behalf of herself and the proposed Class members pursuant to the Federal Rules of Civil Procedure 23(b)(2) and (3).  The proposed Class consists of:

> All persons who purchased defendant's Creamy Supreme® Milk Chocolate Frosting in the State of Florida (the "Class").

54.     Excluded from the Class are: (1) Defendant, as well as Defendant's subsidiaries, affiliates, employees, officers, directors, assigns, and successors, and any entity in which Defendant has a controlling interest; (2) the Judge to whom this case is assigned to and any member of the Judge's immediate family; (3) anyone who purchased Frosting for the purpose of

- 13 -

resale; and (4) anyone asserting claims for personal injury.  Plaintiff reserves the right to amend

the definition of the Class if discovery and/or further investigation reveal that the Class should be

expanded or otherwise modified.

56. **Numerosity**: The members of the Class are so numerous that joinder of all

members is impracticable.  Plaintiff reasonably estimates that there are thousands of consumers

of the Product in Florida.

56. **Commonality and Predominance**: Common questions of law and fact exist as to

all members of the Class.  These common questions predominate over any questions affecting

only individual Class members. These common legal and factual questions include, but are not

limited, to the following:

    a.    whether Defendant's labeling regarding the Frosting's characterizing

          flavors is deceptive and misleading;

    b.    whether Defendant engages in unlawful and misleading business practices

          by failing to properly label its Frosting sold to consumers;

    c.    whether Defendant's conduct, as alleged herein, violates the FDUTPA;

    d.    whether Defendant has been unjustly enriched by its conduct alleged

          herein;

    e.    whether Plaintiff and Class members have sustained monetary loss and the

          proper measure of that loss; and

    f.    whether Plaintiff and Class members are entitled to declaratory and

          injunctive relief.

57. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class, as

all Class members are similarly affected by Defendant's wrongful conduct.  Plaintiff, like other

members of the Class, purchased the Frosting after exposure to the same material misrepresentations and/or omissions appearing on the Product labeling, on Smucker's website, and in its other advertising.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the Class.

58.   **Adequacy**: Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class.  Plaintiff has no interests antagonistic to the interest of the other members of the proposed Class and is subject to no unique defenses.

59.   **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expenses of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually redress the wrongs done to them effectively. Even if the members of the Class could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents no management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

60.   Unless a class is certified, Defendant will improperly retain monies received, as a result of its conduct, from Plaintiff and members of the Class. Unless an injunction is issued, Defendant will continue to commit the violations alleged herein, and the members of the Class and the general public will continue to be misled.

- 15 -

## COUNT I
### Violation Of Florida Deceptive And Unfair Trade Practices Act
### (FLA. STAT. § 501.202(2), *et seq.*)

61.     Plaintiff realleges and incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint as though set forth fully therein.

62.     At all relevant times, Plaintiff and members of the Florida Class were consumers

within the meaning of the FDUTPA.

63.     At all relevant times hereto, Smucker engaged in trade and/or commerce within

the meaning of the FDUTPA.

64.     The Florida Legislature has expressly stated that the FDUTPA "shall be liberally

construed to promote" its underlying policies, including "to protect the consuming public and

legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practice in the conduct of any trade or commerce."

FLA. STAT. § 501.202(2).

65.     The FDUTPA prohibits the use of "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce." FLA. STAT. § 501.204(1).

66.     The FDUTPA further provides that the Florida courts give "due consideration and

weight" to the Federal Trade Commission and federal court interpretations of section 5(a)(1) of

the Federal Trade Commission Act, 15 U.S.C § 45(a)(1). FLA. STAT. § 501.204(2).

67.     Defendant's labeling and advertising constitutes a deceptive act because it is a

representation, omission, or practice that is likely to mislead – and has misled – a consumer

acting reasonably under the circumstances, and violate FLA. STAT. § 500.04 and 21 U.S.C.

§343.  Defendant misled consumers, acting reasonably under the circumstances, into believing

that the Product is made with higher-quality ingredients than it actually is, because Defendant's

Product labeling unlawfully represents that milk is a characterizing flavor on the PDP, fails to

disclose on the PDP that the Product contains no milk or natural milk flavor, and fails to disclose

on the PDP that the Product is artificially flavored.  21 C.F.R. §§ 101.22(i)(1)(ii), (2).  As a result

of this reasonable, but erroneous, belief, tens of thousands of consumers have purchased, and

continue to purchase, Defendant's Product.

68.     Defendant's labeling and advertising constitutes an unfair practice, because it

offends established public policy and is immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers.

69.     As a direct and proximate result of Defendant's deceptive acts and unfair

practices, Plaintiff and the Class purchased the Frosting.  It was reasonably foreseeable, and

intended, that the Frosting's labeling would lead a reasonable consumer to believe that it was

made with real milk, and that such a consumer would purchase Defendant's Frosting over

similar, but artificially-flavored products, based on that belief.

70.     Plaintiff and the Class suffered actual damages, because they purchased the

Frosting over other similar products, erroneously believing that the Frosting was made with real

milk, and, thus, of substantially better quality than it actually was (and is).

71.     The above-described deceptive acts and unfair practices by Defendant present an

ongoing threat to the Class.

72.     Plaintiff is informed and believes and thereon alleges that Defendant has

systematically perpetrated deceptive acts and unfair practices upon members of the public and

has knowingly and intentionally misled – and continues to mislead – Plaintiff and the Class.

73.     Pursuant to FLA. STAT. §§ 501.211(1), Plaintiff and the Class seek declaratory

judgment and a Court Order enjoining the above-described wrongful acts and practices of Defendant.

74.     Additionally, pursuant to FLA. STAT. §§ 501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

**COUNT II**
**Unjust Enrichment**

75.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though set forth fully therein.

76.     This claim is asserted, in the alternative, on behalf of Plaintiff and the Class, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

77.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.  Specifically, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiff and the Class).

78.     It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration and other monies obtained by and from its wrongful conduct in promoting, marketing, distributing, and selling its Frosting.

79.     Plaintiff, on behalf of herself and all others similarly situated, seeks restitution from Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class, prays for judgment as follows:

- 18 -

a.      Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and her counsel as Class counsel;

b.      Compensatory and other damages identified herein;

c.      Awarding restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class as permitted by applicable law;

d.      An Order requiring Defendant to cease and desist from engaging in its wrongful conduct and to engage in a corrective advertising campaign;

e.      Statutory pre-judgment and post-judgment interest on any amounts;

f.      Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

g.      Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: March 10, 2016                  Respectfully submitted,

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

s/ Nathan C. Zipperian
Nathan C. Zipperian (Fl. Bar No. 61525)
1625 N. Commerce Parkway
Suite 320
Fort Lauderdale, FL  33326
Telephone: 954/515-0123
Facsimile:  866/300-7367
Email:  nzipperian@sfmslaw.com

Scott R. Shepherd (Fl. Bar No. 69655)
James C. Shah
SHEPHERD, FINKELMAN, MILLER &
   SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone:  610/891-9880
Facsimile:  866/300-7367
Email: sshepherd@sfmslaw.com
      jshah@sfmslaw.com

*Attorneys for Plaintiff*